The court's second case this morning is case number 4110665. That's Ebony Hopson v. Macon County et al. And for the appellant we have Benjamin Jacobi. I'll probably miss the next one too. And for the appellee, William Hurrigan. Two for two. I'll just make a note of that right now. Thank you. You may proceed. My name is Benjamin Jacobi. I represent the appellant in Macon County in this case. The appeal asks whether it is possible or appropriate to certify a class in a mass tort where the class members have suffered different injuries, different damages at different times over a period of five years or more. And where the class is defined as people who have, quote, no permanent injuries or loss. The answer is no. Predominance is outweighed in this case. The damages are different. The injuries are different. The approximate cost has to be separately approved for each plaintiff. And Ebony's, the named plaintiff's claim, does not establish a right of relief for the other class members. Before I even get to those points, which I'm not going to talk about in detail, I think it's important to note one thing. And that is that the plaintiffs and the defendant do agree on one thing in this case. And that is that the class members have suffered no compensable injury. They have no emotional damages, no physical damages. The only injury that they've suffered is the injury that comes by virtue of having a tort committed on them. The damages available are nominal damages. Why do you even care about this lawsuit? Because if the class is certified, we don't really know what nominal damages means. Under Black Slaw Dictionary, it's a trifling sum entitled to people who have had a tort committed incident. But, you know, that could be $1. It could be $100. No plaintiff's counsel has cited a case where it was $1,000. There's supposedly 140 or 160 plaintiffs in this case. If we're talking about $100 per plaintiff, then, you know, we're talking about $16,000 or so. The only way that the class can, the only way that the plaintiffs even want to bring their claims is if they can come together as a class, because prosecuting a claim for $100 isn't worth it. Well, that's a good reason to allow a class action, isn't it? When every plaintiff is only entitled to a minimal amount, isn't that a reason to allow a class action? It is, and that's an excellent point, Your Honor. The problem in this case is that the class definition, as certified by the circuit court, doesn't limit the class to people who only have nominal damages available. The class definition in this case expands the scope of the class members to people who have different injuries and different damages outside that of nominal damages. That's the real problem in this case. The class definition in this case is all persons who, during the limitations period as defined by applicable statute, were patients at Macon County Health Department and were examined or treated there by Tamari Yonker at a time that Tamari Yonker did not possess a license as required by the Illinois Dental Practices Act and who, by treatment or examination, suffered no permanent injury or loss. The no permanent injury or loss is the key words, we think, in this appeal. The facts, just briefly, are that Dr. Webb worked for Macon County as a dentist. His assistant was Tamari Yonker. It's alleged that Tamari Yonker performed procedures for which she needed a license under the Illinois Dental Practices Act and she did not possess that license. Dr. Webb and Tamari Yonker were actually prosecuted criminally for these charges. Dr. Webb was found guilty at a stipulated finished trial of official misconduct. Tamari Yonker pled to a misdemeanor unauthorized practice charge. The plaintiffs in this case are the people upon whom Tamari Yonker performed those procedures for which she needed a license but did not have the license. They bring five counts. They bring a battery and a negligence against Tamari Yonker. They bring medical malpractice against Dr. Webb. And they bring respondeat superior and a willful one claim against Macon County. Under 2801, as you're aware, predominance is required. And under the Smith v. Illinois Central Railroad case, the Supreme Court has had expansive discussion about what predominance in Illinois really should mean. You know, it has found that class actions of mass torts are historically disfavored because the class members need individual determinations of certain things like proximate cause, damages, and injuries. Where predominance is not, or where predominance exists, successful adjudication of the representative's claim should decide the claims for all the class members. And all that's left really is just submitting a claim after liability has been established. Individual damages should be referenced by a mathematical or formulaic calculation. So there is no individual proofs of proximate cause or of injuries. It's just simply submitting your claim and you're entitled to those damages. In this case, that does not exist because the definition is for no permanent injury or loss. No permanent injury could mean anything as far as we're concerned. You know, a broken leg is not a permanent injury if it heals. Are you suggesting that if we incorporate nominal damages into the class definition, that would suffice to address your concerns? Yes, Your Honor. If the class definition is modified to limit the class to only people who can recover only nominal damages, then I think that common issues of law and fact may predominate then over the individual issues. That would get rid of proximate cause. That would get rid of the damages, the different injuries among class members. And that would take care of the damages. Well, if we were to do so, who sets what a nominal damage is? That would be a question for the fact finder? The plaintiffs will contend it's a question for the fact finder. It's a question that can be submitted to a jury, particularly because in this case there will still need to be some discussion or some finding as to whether or not liability occurred at all, whether or not there was consent or a lack of consent by the plaintiffs to the offensive touching by the unlicensed professional. So the case will go to a jury based on those facts. And if Ebony Hobson's claim is then approved, then her and the rest of the class members who have only had a nominal damages type of injury will then be awarded a nominal damage that the jury will decide. Are punitive damages possible in a case like this? No, because punitive damages then would require other individual determinations. The jury instruction for punitive damages in Illinois requires a finding of reprehensible conduct, whether an amount that would deter the defendant from future misconduct. I think punitive damages would destroy predominance because the defendants then would be suffering some sort of punitive award against them for claims that they weren't allowed to challenge as well. Suppose Ebony Hobson proves that there was the offensive touching, that it was intentional, that she should be entitled to some punitive award for this. That punitive award can't transfer to other class members because the defendants then should be able to challenge the reprehensibility of each contact that the defendant had with that class member. I think punitive damages would destroy the predominance in this case. As I stated before, the real problem in this case then is the class definition, no permanent injury or loss. As we've discussed thoroughly in the briefs, injuries could be different, damages could be different for each class member. Suppose somebody has a minor anxiety attack upon learning that Tamara Yonker was unlicensed compared to somebody who had recovered within an hour. Then somebody had a more prolonged fear of Dennis that manifested somehow for a year and then recovered. Both these people would have non-permanent injuries and would be within the class, but both would be entitled to completely different types of damages applied to what he was proven. In addition, proximate cause would play a major factor in determining whether a plaintiff should get damages at all or whether or not her injury was caused by the conduct of Tamara Yonker. Note the severity and duration of the injury, the person's prior status before the examination, status after the examination. We would have to dive into people's psychological records, every single class member's psychological records, for an emotional damages claim to determine whether or not that person was an eggshell type plaintiff or whether they had those emotional damages prior to the Dennis Act occurring, maybe they were already afraid of Dennis, so on and so forth. Proximate cause would have to be proved for every single class member under this definition. In addition, Ebony's claim will not establish a right of recovery for the other class members, and this sort of gets into the liability prompts of this case, where you have to prove a lack of consent. Ebony might not have consented to Tamara Yonker performing a procedure without the license, but what if somebody else did? What if somebody knew that she didn't have a license? A relatively small community, maybe they knew her from the grocery store and they knew that she was a dental assistant. These are sorts of things that defendants would be entitled to challenge under the historical tort jurisprudence, every element of the claim. The statute of limitations is an important aspect in this case as well, and the class definition tries to take care of that in that it limits class members who were only affected during the limitations period as defined by ethical statute. But that's going to be really hard to handle in this case, and I'm not sure the class definition really takes care of it, because if you have claims going allegedly back five years, 2005, the idea is that the limitations period begins running upon the plaintiff's knowledge of this occurring, or when they should have known. It's contended by plaintiffs that they all found out on the exact same day, April 8th, 2010, when it appeared in the news. But the defendants would challenge whether or not these plaintiffs might have heard about this earlier, or should have known about it earlier, depending on the sorts of rumors or things that might have been going around the community. Because of all these elements that will have to be individually proved per plaintiff, the class as currently defined would quickly degrade into many smaller separate trials. Because of that, the class action vehicle isn't even an efficient method of adjudicating these claims. You should have a bunch of small trials instead of one? The one large trial would essentially be many small trials, because we would call every single class member to the stand and challenge when they found out about the tort, what their damages were, how their damages were approximately caused by the acts of Tamara Yonker. Every single person would be challenged. And the defendants have the right to do that historically under the Torture of Supremacy. That's the whole point. We're allowed to challenge every element. I think by modifying the class definition, as we discussed earlier, we take a lot of those elements out. How does the modification of limiting damages to nominal affect the statute of limitations? I'm not sure I follow your argument there. I don't think it does. That would not take that particular prong out. And the statute of limitations may very well destroy predominance altogether anyway. But if we're trying to get as many common facts and legal theories to the plaintiffs as possible in order to try to get this into a manageable class, then the first step we have to take is limiting it to plaintiffs who only have nominal damages. That gets rid of approximate cause. That gets rid of the injuries aspect. That gets rid of the different damages aspect. The statute of limitations is a different question. And that would still be out there. And we would challenge that for every plaintiff. And maybe what we could do is have them verify an affidavit or a certificate when they may have found out about this or should have found out about this. But that's an issue that would certainly have to be addressed. As would the... I think, Counsel, you also argued that the term examined appearing in the class definition was problematic. Could you address that? Yes, Your Honor. As the definition is set forth, the wording is important because it defines who are the plaintiffs in this class. And the wording is particularly important because if they're members of this class, and this class settles or judgment comes, then all those people are bound by res judicata. And the defendants are entitled to know who's bound and who's not bound. And the word examined in this definition, and I'll just reiterate the first part of the definition, all persons who during the limitations period, as defined by applicable statute, were patients at the Macon County Health Department and were examined or treated there by Tamara Yonker at a time when she didn't possess a license. The word examined could be interpreted to mean she had her fingers in the mouth and were doing things that the plaintiffs were really complaining of in this case. Or, you know, the examination could mean that the plaintiff opened, or the class member opened their mouth and Tamara Yonker took a look inside. Maybe she didn't even touch the plaintiff at all. The problem is that when we send this definition out to potential class members upon notice, that's required under the due process clause, but people will see this definition and say, yeah, I was examined. I sat in that chair. She was standing there. Maybe the dentist was working on me, but she was certainly helping with the examination or examining. Then we have class members submitting claims who really aren't class members. And now we have a problem where we have to challenge people's statements and verifications, and we have to find out whether or not they were examined as this definition is contemplated, whereby the dentist or the Tamara Yonker opened the mouth, put her fingers in there, and did the sorts of procedures that is forbidden under the Illinois Dental Practice Act without a proper license, or whether they were just simply sitting in the chair and were examined because they opened up their mouth and Tamara Yonker took a look in. I think that that problem is really just a compounded problem upon sort of the vaguety of the definition anyway. Well, let me ask you this, counsel. What if we modified the definition so it includes patients, only patients, upon which acts of dentistry were performed by Yonker? Would that assuage your concerns? As to the word examination, yes, it would. And maybe if we said dentistry is that word used in the Illinois Dental Practice Act so that it's clear when people submit their claims and they know that these were specific things that are forbidden under the Dental Practice Act to perform without a license. And we might even be able to help clear this up even more in a notice because we could list the things that people might have had performed. Did Tamara Yonker inject numbing agent into your gums? Check yes. And then verify that in. Now we know that this person has had a procedure performed, that there is a license needed under the Dental Practices Act. So, as the class is currently defined, where people are defined as people who have been examined or treated, and we found that problematic, and as people who have suffered, quote, no permanent injury of love or loss, we find that problematic. The predominance issues abound. We find that they could have suffered different injuries. We find that they're probably all entitled to different amounts of damages We find that proximate cause issues vastly outweigh individual determinations or are vastly affected by individual determinations. And even liability and consent are going to be problematic and are going to require individual determinations, in addition to the statute of limitations of affirmative defense, which we will no doubt raise. The definition may be salvageable if modified, and perhaps individual... Did you ask the trial court to make those modifications? We did, Your Honor. I don't think we got into the examination aspect as much, but as to the no permanent injury or loss, we did file a motion for clarification after the class was certified and asked them specifically to put the words nominal damages in there to help narrow the class into what was contemplated, both by plaintiff's counsel and, we believe, by the judge, during our hearing at class certification. If Your Honors have nothing else... I see no further questions at this time, but you will have rebuttal. Thank you. Mr. Horton. Yes. Put on my glasses so I can see something here. What were the damages in this suit? I'm sorry, what? What class alleged damages? Well, Your Honor, the lawsuit that was originally filed alleges all sorts of damages which I don't believe are appropriate for class certification. My personal view of this case is that the damages in a class have to predominate, so therefore they have to be one type of damage that fits each and every injured party, and that's the nice thing about being a judge, is that you can fashion a remedy that gives you predominance. My particular problem with Judge Weber's certification, which I'm not asking you to overrule because I can live with it, is that I believe nominal damages can be different when different procedures are performed. So I think that the damages that result to a patient when all that is done is that fingers go into mouths or scraping of teeth, maybe there's some impressions for dental fixtures, when that's done, I think that type of conduct gives rise to a different level of nominal damages than when an injection of Novocaine, an X-ray, an extraction, or a filling are performed, which is why I urged the trial court and I urged this court to send directions to Judge Weber to set up the subclasses as is contemplated by the statute. Who's going to pay for all of this? In the end, who's going to pay my clients? Who's going to know? Well, who's going to pay you? Is it going to be Macon County? Well, I'm working on a contingency basis, so I expect that there's policies of insurance in effect for Dr. Webb. Macon County is insured under the – there's like a pool of counties that get together and have some sort of an insurance pool, and they have insurance. Dr. Webb's carrier has defended under a reservation of rights, and no one has yet decided whether they're going to pick up the cudgels for Tamara Yonker. But there is money out there. I hate to say it, but Macon County is ultimately responsible for the negligent acts of its agents, servants, and employees. Dr. Webb was the director of the facility. He's in the control group, and he's directing all these activities. And I just want to point something out that is not in the briefs, but since counsel brought up the fact that there was a guilty plea entered in on behalf of the two defendants, there's also a stipulation of facts. And that stipulation of facts stipulates, among other things, that Tamara Yonker and Dr. Webb both committed unauthorized dental practice. And in one of the interesting stipulations of facts is that Dr. Webb would refer to Tamara Yonker as Dr. Yonker. So what we have here is we have an employee who's acting in the course and scope of her employment, who's being directed to do things by the director of the facility, and there is a statute that talks about criminal acts as applied to corporations that basically says that if you have an employee who commits a negligent act, that negligence can impute to a corporation. And if you have a person in the control group who commits a felony, the corporation can be found guilty of a felony. Now, I don't ever expect that to happen to a governmental entity. And there were any damages caused? There's always a damage when someone commits a battery. According to you? Well, according to the law, actually. I cited a case which was Parrish v. Donahue, which indicates that regardless of the offensive touching and what happens, there is a damage here. And when there's a damage, there's compensation that's entitled, and these people are entitled to have that compensation. And Mr. Justice Cox, I believe you asked about punitive damages in this case. Punitive damages are not allowed against governmental entities, nor are they allowed by law against the employees of governmental entities acting within the course and scope of employment. If this was a private dental clinic, yes, punitive damages would certainly be an issue, but as an operational law, they're not allowed here. So what we're talking about here is a few hundred dollars? I don't know what we're talking about, Your Honor. I just have a hard time understanding how a case like this moves forward. Well, how it moves forward, first of all, is you certify the class. And then we determine who the class members are. And this is not that hard to do. There are records here in the Macon County Dental Department that pretty much show who the patients were that were treated by this person. I don't know, but are we only talking about a few hundred dollars here? Well, we're probably talking about 3,000 patients. We've got 800 patients being treated every month by a dentist, a full-time dentist and a part-time dentist over a period of six years. But all you get is nominal damages. We don't know what those are, but they're still damages, and my clients are entitled to damages. They're entitled to some redress for this egregious act that was performed upon, what we're talking about here is indigents, people who don't have choices. I understand you say that instead of maybe 170 plaintiffs, there could be 3,000? Yeah. Is that correct? Yeah, well, I have individual representation of the tip of the iceberg. These are people who came to me because of the publicity that this case generated. I was on television a couple of times, and I've got to get my water. But if you look at the numbers, I have spoken with the inspector general for HHS who is looking into the Medicaid fraud element of this. We have a potential for an exceedingly large class because we are of the opinion, and of course we haven't any benefit of discovery at this point, but it's entirely likely that this woman could easily have treated 100 of the 800 people every month that are going through that dental clinic for the past five or six years. That makes this class potentially large. I mean, it's large enough as it is, but it's even potentially larger once we get to the class certification process. Well, you, I think referenced, you got a question, I think you moved away from it, subclasses for the determination of nominal damages, which I guess, if I'm following your argument, you're saying that for some plaintiffs, nominal damages might be $1 for some, and maybe it will be $100 or more. Or $1,000, yeah. Okay, well, how is that then not an argument actually for opposing counsel that you've got to have a separate damages trial for every single one of the plaintiffs? Because you take each subclass and you do what counsel suggests. You say this is a class that's composed of those people who had an injection of Novocaine and no other damage whatsoever other than the battery that is associated with injecting Novocaine. Or this is a class of the people who had an injection of Novocaine and a disconnection and no other damage other than that which is associated with that. So what you have is you have distinct subclasses with modified – How many subclasses do you envision? Well, I have it in my complaint. You've got the people who basically had very minimal procedures. Then you have the people who had x-rays, only injections of Novocaine. Then you have the people who have extractions and the people who had films. So you're talking about five subclasses. I filed suit for six, but the one subclass that I listed, which was parents who had emotional distress, that clearly cannot be certified in this class. And if those cases are going forward, they're going to have to go forward individually. So you can and you should, in this instance, frame a remedy for these people who have been damaged and abused by this system, which allowed a bunch of people on public aid and indigents who don't know any better to go into a dental clinic and have a fraudulent representation made to them that Dr. Yonker, who is really nothing more or less than a dental janitor. I mean, dental assistants under the statutes can develop x-rays, but not take them. If they have sufficient training, which we don't know whether she had, they can clean the crowns of teeth but not the margins. And other than that, they get the chart, they walk the patient in, they hand the dentist the tools, and when they're done, they clean up the examining room and they're off. With regards to statute of limitations, there are records here. We know, we will know when the class is certified and the notices go out, who the people are. HFS is probably requiring Macon County to do an audit of all the treatments that they charged dental rates for that Tamara Yonker actually performed. So the county is placed in a position, will be placed in a position, where they have to pretty much certify who these people are. And the issue of consent is a specious issue because the fact of the matter is, in medical parlance and medical terms, consents are in writing. Every procedure involves some sort of written consent. I can't imagine we're going to see a consent that says, and I hereby consent to someone who has no training, no license, and no experience to perform dental procedures in my mouth. So as far as possible cause, if we keep it at a battery, simple battery, then the cause is very clear because she shouldn't have been there. She didn't have the consent to be there. She didn't have the rights to be there, and nobody would, even the least educated person in the world, when given the option, would you want to be treated by a dentist? Would you like this woman who has no experience or training to come in and mess around with your mouth? It's very obvious what people would say in that instance is that, no, I want to have a dentist treat me. They went to a dental clinic for that purpose. So we have proximate cause for everyone because they have the defendants, the two principal defendants have pled guilty to the conduct which gives rise to proximate cause for a simple battery. We have damages which can be considered identical if we limit the damages to the actual act involved and don't go beyond with pain and suffering and whatever. And I'll admit to you, I do have one client who has had significant problems as a result of this dental care, and I will opt that client out. She is not the named plaintiff. So they have a right to opt out of this class action if it should turn out that this definition of the class is not one that a particular patient is happy with. But the proof of any particular individual claim is the proof of all the individual's claims because an injection of novocaine is an injection of novocaine is an injection of novocaine. An extraction is an extraction. A filling is a filling. And if that's what these people had and we can determine that from the dental records, then we have been able to prove the claim in terms of all the class members. So we have what I call, I know everybody is making fun of it, but I call it a serial tort. This is not a mass tort, all because it involves a massive number of people. It's not the situation where you had down in southern Illinois where the train wrecks, the gas spews around, and then you've got all these people who are affected by this gas to varying degrees. That class could have been salvaged if the court was willing to define the damages differently. In addition, every court seems to want to throw the baby out with the bath water on these cases, and I'm not too sure why there is. Because the statute suggests that even if there isn't complete predominance, if there's identical issues that can be determined on a class-wide basis, then you can certify the class for that as well. Now, I'm not recommending that because I think that we have predominance here. I think that the representatives that we have adequately represent any member of a class whose sole damages are having an examination made. And I think we tend to get hung up on words here because we're talking in a medical context. Examination doesn't mean, you know, I sat back and I took a look at you and said, yeah, you look okay. In a medical context, examination means actually physically doing something that a dentist would do as a part of a medical treatment or plan. So I believe that even though this is a very different case for a class action, that it falls within the criteria that the legislature set forth. Interestingly, and I know the Supreme Court is not fond of mass tort class actions. In fact, it appears from their rulings of late that they're not fond of class actions at all. But the legislature did not restrict in any way what type of case could be brought as a class action. And this case, in my view, based upon the facts and the way that we can construct a class certification, sets forth the absolute type of case that the legislature intended. Part of this whole intent is not to sit down and have 160 individual trials. Part of this whole class action idea is that judicial economy should be favored. And I believe that we can have judicial economy if the class members who don't like the limitations that the certification places upon them, they can opt out. But I think that when we get involved in certification as a class, we're not going to be talking about 140 or 160. We're going to be talking about considerably more. But I'm just really kind of blowing smoke on this issue because we haven't gotten past the proceedings yet. Did you have any other questions? Could you address Mr. Jacoby's argument regarding the statute of limitations and whether it's going to be different for these hundreds of people? Well, I think the statute of limitations issue is a summary judgment issue. What we have here is we have fraudulent concealment by the two principals involved who have admitted in their plea that they were engaged in conduct intended to deceive. I mean, they don't say that the conduct was intended to deceive. But if you look at what you've got Dr. Webb calling Tamara Yonker, Dr. Yonker, it's very clear that what they are doing is they're engaged in fraudulent deception. They've been doing it all along. We'll get that out of them in terms of the discovery that comes forward. And it's a summary judgment issue. The fact of the matter is if they are representing to everyone that she's a dentist, then how is anyone going to know that she's not? So I don't think that statute of limitations. And if it should become that, then you go back two years. It's real simple. You cut some of the plaintiffs out if it comes down to that. Or you send a questionnaire out and say, you know, when did you learn? Because I guarantee you that most of these people who are members of this class still don't even know it. The problem is the people that I'm representing very often do not read the paper, very often do not find anything in the nightly news of any interest to them, so they still think they're being treated by a dentist. Every person that I have interviewed in my 160-some cases thought that Tam Rayanka was a dentist. They had no idea until they saw the news article or my interviews on television that she wasn't. So I think that the statute of limitations issue is really a red herring, that it will be resolved one way or another in the course of determining this case. Well, I know it will be resolved. My question is, is it a problem? I don't think it's a problem. I think that when we get into the facts of this case, we'll be able to resolve the fraud. You're saying you can just send out an affidavit or a questionnaire and that resolves the statute of limitations question that he raises, depending on how they respond to that? Well, what I think, frankly, is that the fraudulent misrepresentations will end up barring them from raising the statute of limitations issue because when you go out and actively, fraudulently misrepresent the status of someone who's performing dental procedures, you're not going to come back in and say, well, everybody knew because nobody knew. And there's co-workers and there's all sorts of people that need to be deposed who are going to talk about what was actually going on in that dental clinic over the past six years. And the fraudulent misrepresentation that you're referring to is when the real dentist called Young for a doctor? Well, he did more than that. You know, they called her a doctor, but he was present in the room while she was performing procedures. They discussed which teeth should be pulled, and she got into heated arguments with him with regards to whether his view of the x-rays of the And I think when we get down to it, we'll find out that he treated her in every respect in the course of her being there as a physician and that there's no basis to assume that anyone would have known any differently. Nothing else? Thank you for your time. Any further questions? Thank you. We'll have rebuttal now. Thank you, Your Honors. I will keep it brief. But there are a few important parts I think we should address. He's correct, plaintiffs are correct that Macon County is not subject to punitive damages. As well, he's correct that the doctor and Tamara Yonker have been criminally prosecuted. The claims against Macon County are respondeat superior and willful in line. It's going to be our motion to dismiss that we have not filed yet that the criminal acts bring Tamara Yonker and Dr. Webb outside of the scope of employment. There is no respondeat superior relationship there. So if your employee commits a crime, you aren't responsible for him anymore? I haven't written the motion yet, Your Honor. But the law as I understand it right now is that if the employee acts outside the scope of employment, then you're not responsible for him. And sometimes when an employee commits a crime, that brings the employee outside the scope of employment. Well, I guess we don't need to talk about that today, right? You say you're going to file a motion. That's not a part of this case. Correct. There's a representation that there may be 3,000 patients. I haven't seen anything like that. The pleadings have only stated this 160 or so. But plaintiff's counsel indicates that you'll find more through discovery. The medical billing records have all billed all of these procedures to Dr. Webb. And it's my belief that at some point anyway there was investigations as to Medicaid fraud. In fact, I think that's how this whole thing started to some extent. So the records are not going to reflect 3,000. There's going to need to be significant discovery, probably depositions of every class member to find out if they were examined or treated by Tamar Yonker, as it's currently defined by the statute. Plaintiff's counsel makes a point about opting out his one plaintiff who did suffer more damages. The fact that that plaintiff could even be considered in the class at all just proves the point that there are significant variation of damages and injuries in this class. As you say, there are significant variations. But isn't it trial court's call to decide whether this is the kind of case that ought to be a class action? Whether there's a commonality among enough people here to justify a class action? Certainly his discretion. But it's our position in this appeal that the circuit court abused his discretion in certifying this class because the predominance issues are just too simply individualized. As well, there's an argument that well, we have to certify the class because we need a more efficient adjudication of all these very small claims. And that's true. And maybe they satisfy that prong. But the plaintiffs have to prove all four prongs. They can't weigh the four against each other. It's more efficient but less predominant or more predominant and less efficient. You have to get predominance. That's really the issue in this case. If you don't get predominance, then necessarily the one trial will degrade into many smaller trials separately tried over the proximate cause and the consent and the damages and all those things we talked about before. The statute of limitations is an important issue. And there's some representation that there were fraudulent misrepresentations made that somehow told the statute of limitations there should be some equitable tolling here. But that hasn't been pled and to the extent that it's asserted, it will be moved to dismiss. But that has not come out in this case yet. And defendants have the right to assert the affirmative defense of statute of limitations to every single plaintiff who brings a tort against them under Illinois law. And if this class cannot be certified, then defendants would assert that as to each class member. And because each class member may have known or may should have known about the tort or the accruement of the tort, then each class member's individual issues are going to determine when they should have brought the claim, if at all. And maybe they didn't know about it until April 8th, but we don't know that until we ask them. And just real briefly on the issue of subclasses and the nominal. Thank you to both of you. The case is submitted. And the court will stand in recess.